HAMLIN, Justice.
 

 The defendant, James Kelly, together with three other defendants, Earl Sims, Freddie Scott, and Harold Martin, was charged by bill of information with attempted murder,
 
 [1]
 
 a crime prohibited by LSA-R.S. 14:27. On motion of defendant Kelly, a severance of his case from that of Harold Martin was. granted. On motion of the State of Louisiana, the lower court granted a severance of the case of James Kelly and Freddie Scott from that of Harold Martin and Earl Sims. Kelly and Scott were tried, found guilty, and each sentenced to serve twenty years at hard labor in the Louisiana State Penitentiary. Kelly has appealed to this Court, presenting eight bills of exceptions for consideration.
 
 [2]
 

 Bill of Exceptions No. 1 was reserved to the trial judge’s overruling defendant’s objection to the following question, which the District Attorney propounded to Earl Sims while he was testifying on behalf of the State:
 

 “Before the 12th of February of this year, have you ever seen Kelly, Scott and Martin together?”
 

 In answer to this question, the witness testified that he' saw these three men together almost every day because he worked with them; that he sometimes saw them getting on a bus together; and that sometimes he saw them together on a street corner.
 

 In this court defendant contends that no mention was made in the District Attorney’s opening statement that such facts, as were elicited by the question, were to be proved; that if the facts were material, the District Attorney should have mentioned them in his opening statement (LSA-R.S. 15:333); that the testimony was not relevant; and that had the District Attorney attempted to prove that on prior occasions defendants had actually committed crimes together, such proof would not be relevant and material, unless it was offered to show preparation for the commission of the crime charged, or intent, motive and a consciousness of guilt — citing State v. High, 116 La. 79, 40 So. 538; State v. Morgan, 211 La. 572, 30 So.2d 434; State v. Palmer, 227 La. 691, 80 So.2d 374. He argues that the test must be the same for much weaker evidence, such as was elicited in this case. He states that no proof was offered to show that the association of the defendants was part of the preparation of the crime charged, or to
 
 *961
 
 indicate any intent, motive or consciousness of guilt.
 

 In per curiam, the trial judge observed that the accomplice Harold Martin testified that the instant crime was committed by Martin, Kelly and Scott as principals. It was the judge’s opinion that the State, in showing that the three persons charged as principals knew one another, worked together, and were associated for a period prior to the commission of the immediate offense, was endeavoring to prove a material and corroborative fact.
 

 We have read the opening statement of the District Attorney, which is attached to the instant bill, and we find that it embraces the evidence involved. We also find that the testimony was material and relevant (LSA-R.S. 15:440, 15:441) and was admissible to corroborate facts to be proved on trial (LSA-R.S. 15:485). State v. Smith, 193 La. 665, 192 So. 92.
 

 There is no merit to Bill of Exceptions No. 1.
 

 Bill of Exceptions No. 3 was reserved to the trial judge’s overruling defendant’s objection to the testimony of Harold Martin, a witness for the State. The pertinent testimony, to which the objection was raised, is as follows:
 

 “Q. Did you see the shotgun? A. Yes, sir.
 

 “Q. What kind was it? A. A 12 gauge shotgun.
 

 “Q. How many times could it shoot without reloading? A. One time.”
 

 Counsel for defendant contends that proper foundation had not been laid for this witness’ alleged knowledge that the rifle could fire only once — citing LSA-R.S. 15:368; that the statement that a weapon can fire only once is a statement of opinion, which requires a foundation of knowledge of a peculiar sort; that when this particular item of evidence is linked with testimony as to how many shots were fired by the alleged robber at the scene, it assumes materiality and weight with a jury. Counsel argues that the admission of such testimony was harmful and prejudicial to the defendant, but he urges no reason in support of his argument. He further contends that this evidence was such as could only be given by one familiar with firearms in general, or at least with that firearm in particular, and that firearms identification is a recognized subject of expert testimony — citing State v. Dallao, 187 La. 392, 175 So. 4; State v. Graham, 116 La. 779, 41 So. 90.
 

 The able trial judge, in per curiam, answered the contention of defendant’s counsel substantially as follows:
 

 The testimony in the case had established the fact that Martin, Kelly, and Scott had been together practically the entire day before the crime was committed, agreeing to commit the crime, and deciding that ap
 
 *963
 
 pellant Kelly would use his shotgun in the commission of the offense. Kelly had his shotgun when he rode in the automobile with the other two principals to the scene of the crime, the Joy Tavern; he brought the shotgun into the Tavern for the purpose of using it to perpetrate the crime, and he did, in fact, use the shotgun in the perpetration of the crime. The witness Martin had a fair opportunity to see the shotgun and to note whether it was a double barrel shotgun or a single barrel shotgun, and whether or not it was a shotgun that fired a single shell or automatically fired a number of shells. The questions propounded to Martin were obviously questions that Martin was expected to answer from his observation of the gun. The jury knew that the witness Martin was not testifying as an expert, was not asked to testify as an expert, and did not testify as an expert, •but merely as a witness who had a fair opportunity to see and to know the shotgun in question.
 

 The trial judge further observed that if Martin did not know from his observation "of the shotgun whether or not it could shoot without re-loading, he was perfectly free to say so. Whether or not the shotgun could shoot without re-loading was not of great importance in the trial of the case. As a precaution, the court told the jury, “If the jury thinks it is a^question for an expert witness then the jury can determine whether the witness is qualified as ari expert or not.”
 

 The trial judge further said that no special training in science, art, or technical learning was necessary for the ordinary person to state from his observation whether a single [barrel] shotgun was a single shot gun or an automatic repeating gun, and that if the person was unable to so determine from observation he was perfectly free to say so.
 

 In an addendum to his per curiam, the trial judge added the circumstance that the witness Martin embarked on and committed an armed robbery with Kelly; that it was very important for Martin to know what arms and ammunition, if any, one of his partners in the armed robbery was carrying; and that it would be strange, indeed, if Martin did not know, of his own personal knowledge, the answers to the questions objected to.
 

 We agree with the trial judge that the questions propounded to the witness Martin were questions that he was supposed to answer from his personal observation of the gun. Defendant has not shown that he was in any manner prejudiced by Martin’s testimony.
 

 Bill of Exceptions No. 3 is without merit.
 

 Bill of Exceptions No. 4 was taken to the ruling of the trial judge admitting
 
 *965
 
 in evidence a vehicle theft report of the New Orleans Police Department relative to an alleged theft of a Chevrolet automobile which took place on the same day as the offense charged in the instant case. The grounds urged in support of the objection are — (1) that the document was not the best evidence; (2) that it was hearsay; and (3) that the exhibit had not been connected in any fashion whatsoever with the case at bar.
 

 The document was offered while Lt. William J. Salathe, Commander of the Auto Theft Bureau of the Police Department, was testifying as a witness for the State, and he identified it as an original official public police record of the City of New Orleans.
 

 Appellant admits in brief that the exhibit is a public record, but he urges that such status does not automatically give it the quality of being competent evidence.
 

 This public record was offered to corroborate the State’s accomplice-witness, Harold Martin, who testified that he stole a Chevrolet automobile from the neighborhood of Touro Hospital on the day of the armed robbery and shooting. He said that the intention was to use the automobile as transportation to and from the scene of the crime for him, Scott, and Kelly, and that he, Scott, and Kelly carried out such intent.
 

 The trial court instructed the jury that the purpose of introducing this official record was “merely and only to prove whether or not the police had such an entry in their records or not, not to prove the theft of the automobile.”
 

 The objection was to the weight and sufficiency of the evidence, rather than to its admissibility. Under such conditions, it was properly admitted in evidence. State v. Forsyth, 229 La. 690, 86 So.2d 536; State v. Mills, 229 La. 758, 86 So.2d 895; State v. Crovetto, 229 La. 793, 86 So.2d 907.
 

 We find no merit in Bill of Exceptions No. 4.
 

 Bill of Exceptions No. 5 was reserved to the trial court’s admitting in evidence an original record of the Charity Hospital of New Orleans, dated February 13, 1958, relating to Freddie Scott. Appellant contends that the pertinent excerpts from the record are:
 

 * * twenty five year old CM shot in the back tonight, walked into emergency room — bullet went under skin of back and did not enter abd. or chest * *
 

 (Signature of Physician)
 

 and
 

 “Feb. 17, 1958.
 

 “Pt. had superficial gunshot wound left flank 2/13/58. Was on ward 2 days for observation — discharged 2 days
 
 *967
 
 ago. Now doing well. No complaints —no hematuria * *
 

 (Signature of Physician)
 

 Appellant urges that the record should not have been admitted because — (a) a proper foundation had not been laid; (b) the record contained hearsay and expert testimony which should have been obtained from witnesses and not from records; (c) no effort was made by the State to show that the Freddie Scott mentioned in the record was the same Freddie Scott that was being tried; and (d) the trial judge did not allow counsel for defendant to find out who were the doctors and other attendants who made up the record.
 

 In his opening statement the District Attorney stated that the State would show that one of the defendants was wounded and that he applied for medical aid at Charity Hospital shortly after or immediately after the holdup took place.
 

 The records of the Charity Hospital are public records (LSA-R.S. 13:3714) and may be received in evidence as prima facie proof of their contents. The State’s purpose in introducing the original public record in this case was to corroborate the testimony of its accomplice-witness, Harold Martin, who testified on trial that the defendant Freddie Scott was present at the Joy Tavern, acting with James Kelly and himself; that said three persons then and there perpetrated an armed robbery, during the course of which the defendant Kelly fired a shot or shots at one Henry Lang; and that during an exchange of shots between Kelly and Lang, Freddie Scott received a gunshot wound.
 

 We are of the opinion that the record was admissible for the purpose set forth above. State v. Forsyth, supra, and authorities cited in our discussion of Bill of Exceptions No. 4.
 

 Bill of Exceptions No. 5 is without merit.
 

 Bill of Exceptions No. 6 was reserved while Charles Newman, a witness for the State, was under cross-examination by counsel for defendant Freddie Scott. The. pertinent testimony to which the objection is raised is as follows:
 

 “By Mr. Shea (Counsel for Scott):
 

 “Q. You took the witnesses to the hospital with you? A. I did.
 

 “Q. Lang, Martin and Scott were there? A. Yes, sir.
 

 “Q. Did any of these people identify Scott ?
 

 “By Mr. Mac Hauer (Counsel for Kelly) : I object on behalf of Kelly on the grounds it is hearsay as to my defendant.
 

 “By Mr. Shea:
 

 “Q. At the hospital? A. Yes, sir.
 

 “Q.
 
 Where was he when they identified him ? A. In the emergency.
 

 
 *969
 
 “By Mr. Mac Hauer: Will the court rule on my objection? The identification must be verbal identification. I am objecting to my co-counsel’s question.
 

 “By Mr. Shea: I will withdraw the question.
 

 “By the Court: Alright. All I can do is to tell the jury to disregard the question and answer.”
 

 Appellant contends that counsel for defendant Scott asked the State’s witness a question which called for hearsay testimony as to Kelly; that counsel for appellant objected to the hearsay testimony; that before the objection was ruled upon, the witness answered the question; that counsel for Scott withdrew the question, and the court instructed the jury to disregard the question and answer; that he was,' therefore, entitled to a mistrial on the basis that the evidence was prejudicial to appellant and was hearsay.
 

 The record discloses that the question objected to in no way involved Kelly and was not prejudicial to him. The trial judge, in his per curiam, observed that the question and answer were a vital part of Scott’s defense; and that immediately after the episode which is the subject of this bill, Scott’s counsel continued his examination on the same subject matter but with a different approach and without any objection from counsel for appellant.
 

 There is no merit to Bill of Exceptions No. 6.
 

 Bill of Exceptions No. 7 was reserved while John Kelly, a Police Officer appearing on behalf of the State, was testifying as to his questioning of the witness Martin at the Charity Hospital relative to the defendant Scott.
 

 The court stated in open court, in the presence of the jury, that it was going to limit this evidence to Scott only. The District Attorney also attempted to do so. When the witness, after having heard the court’s ruling, voluntarily stated that Martin related to him that Martin and Scott had been drinking in Dupre’s Bar, and that “Scott pulled the hold up with him and Kelly,” the court informed him, “You were just asked for certain things. Take care.” Counsel for appellant then moved for a mistrial on the ground that the witness testified in contradiction of the ruling of the court and over the objection he, counsel, initially made. The court overruled the motion for a mistrial, and instructed the jury to disregard anything except what was responsive to the question and again instructed the witness to answer the question asked. The examination of the witness was resumed, and the court and the District Attorney continued to limit his testimony to Scott only.
 

 The answer was not solicited by the District Attorney, and it is not suggested or contended that the District Attorney was
 
 *971
 
 in any way responsible for its having been given. Under the circumstances, the ruling of the trial judge was proper. State v. Simpson, 216 La. 212, 43 So.2d 585, and authorities cited therein. The evidence was admissible (LSA-R.S. 15:485 and 15:496.)
 

 There is no merit to Bill of Exceptions No. 7.
 

 Bill of Exceptions No. 8 was reserved while Joseph Kalister, a State witness, was testifying. The District Attorney signified his intention to question this witness about statements made to him by Harold Martin. The court instructed the witness to listen to the question and answer the question and nothing else; and that if he was asked about one man to answer with reference to that one man and that was all.
 

 It is clear, from the record and from the per curiam of the trial judge, that if this witness was to testify to any statement made to him by Martin in the Charity Hospital, he was instructed to testify only to that part of the statement which related to Scott alone.
 

 For the reasons assigned in our discussion of Bill of Exceptions No. 7, we find no merit in Bill of Exceptions No. 8.
 

 Bill of Exceptions No. 9 was taken to the trial judge’s overruling defendant’s motion for a new trial. Paragraph 1 alleges that the verdict was contrary to the law and the evidence; and Paragraphs 2, 3, 5 and 6, refer to matters contained in the Bills of Exceptions, supra; and Paragraph 4 sets forth that the opening statement of the District Attorney to the jury, in which he stated that he would prove that only three of the four persons charged in the bill of information were guilty of the offense, constituted an informal amendment to the bill of information, which could only be done with the court’s permission, and which was not moved for by the District Attorney; and that the submission of the opening statement to the jury without a formal amendment to the information by the court constituted error on the part of the court.
 

 Defendant did not move for a continuance. In his per curiam, the trial judge stated that while Paragraph 4 of the motion for a new trial was the subject of an objection made at the trial, no bill of exceptions was perfected.
 

 • As shown, supra, on motion of the State a severance of the case of the defendants Kelly and Scott from that of Martin and Earl Sims was granted. Therefore, since only those two defendants, Kelly and Scott, were on trial on the day of the trial, no amendment to the bill of information was necessary to proceed with the trial. Otherwise, Bill of Exceptions No. 9 presents nothing new for our review (State v. Smith, 234 La. 19, 99 So.2d 8) and we find no merit to this bill.
 

 For the reasons assigned, the conviction and sentence are affirmed.
 

 HAWTHORNE, J., absent.
 

 [1]
 

 . “ * * * attempted to murder one Henry Lang, * * * ”
 

 [2]
 

 . Nine bills of exceptions were reserved and perfected. Bill of Exceptions No. 2 has been abandoned.