232 So.2d 484

STATE of Louisiana

v.

Robert O'BRIEN.

No. 49975.

Feb. 23, 1970.

Rehearing Denied March 30, 1970.

H. W. "Pat" O'Brien, Jr., New Orleans, for appellant.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for appellee.

McCALEB, Justice.

Appellant was charged jointly with Jerry J. Gaillard with the unlawful possession of morphine tablets, in violation of R.S. 40:-962. Gaillard pleaded guilty and was sentenced to serve five years in the State Penitentiary. Appellant was tried on his plea of not guilty, found guilty as charged and sentenced to serve twenty-five years in the State Penitentiary as a multiple offender under R.S. 15:529.1. During the proceedings below he reserved thirteen bills of exceptions on which his counsel relies upon a reversal of his conviction.

In order that a better understanding may be had of the bills, especially those pertaining to the search and seizure, a recitation of the facts is pertinent.

Acting on a tip from a confidential informer that appellant and Jerry Gaillard had recently moved to 9023 Quince Street in the City of New Orleans where they were keeping narcotics stolen by them from drug stores outside the city and making trips from the residence in Gaillard's blue Ford to sell drugs to addicts in the area, officers of the Narcotics Squad of the New Orleans Police Department, having checked police records showing that both Gaillard and appellant had previously been in prison for narcotic law violations, placed 9023 Quince Street under surveillance. On May 4, 1966 they watched the house for several hours and, during that time, the

officers saw Gaillard and appellant make several short trips to and from the residence in a blue Ford. Following one of these trips appellant waited in the car while Gaillard entered the house and returned shortly with a small package in his hand which he turned over to appellant. As the concealed officers watched, appellant poured something from this package into a piece of cigaret paper; then he returned the package to Gaillard, who went into the house and returned in a few minutes, got in the car and drove off. The officers stated that during this transaction Gaillard and appellant continually looked around to see if anyone was watching them and the former appeared to be quite nervous. About an hour later the two men returned and entered the residence. At this time Gaillard was carrying a package and the officers saw him open the door of the car, look all around him, and place something from the package under the front seat. Shortly thereafter the two men again drove off in the Ford.

Based on the tip and the information secured by their surveillance activity, the officers obtained a search warrant for the residence, 9023 Quince Street, in order to seize narcotic drugs and burglar tools. Warrants were also obtained to search the persons of appellant and Gaillard and the Ford car. However, before the warrants could be served, appellant and Gaillard left the premises and were not observed

at the house again until May 17, ten days later. The day before, on May 16, the officers obtained a second search warrant, the affidavit in support thereof being identical with the affidavits supporting the May 6 warrant, except the last paragraph of the new warrant set forth that the application for it was being renewed because the two men had apparently been out of the city since May 6.

On May 16, 1966 the Quince Street house was still under surveillance by the officers and, on that day and the following day, motion picture films of appellant, Gaillard and the house were taken by the police. The second search warrants, which included arrest warrants, were executed on May 17 and pursuant thereto the officers searched and seized a quantity of narcotic drugs including opium, morphine and cocaine, narcotics paraphernalia, and burglar tools.

Appellant filed a motion to quash the search warrant and suppress the evidence. During the trial of this motion he reserved Bill of Exceptions No. 1 when the trial judge refused to allow defense counsel to inquire as to the identity of the alleged reliable informer referred to in the affidavit supporting the search warrant.

The Bill is without substance. In State v. Freeman, 245 La. 665, 160 So.2d 571, this Court rejected a similar contention and quoted from Scher v. United States, 305 U.S. 251, 59 S.Ct. 174, 83 L.Ed. 151, wherein it is declared, " * * * public policy forbids disclosure of an informer's identity unless essential to the defense * * *." No showing has been made in this case that the informer's identity was material and essential to appellant's defense.

Bill of Exceptions No. 2 was taken to the overruling of appellant's motion to suppress attacking the validity of the search warrant. Defense counsel contends that the ruling of the trial judge is in conflict with the decisions of the United States Supreme Court, particularly in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L. Ed.2d 723 (1964); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); and other opinions rendered by that Court during the interim between the Aguilar and Spinelli decisions, viz., McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967), and United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). However, counsel does not point out the reason why the facts stated in the affidavit for the search warrant herein are insufficient to comply with the standards set forth in the cited decisions; he merely declares that the trial judge was obviously in error in his rulings on this issue.

The complaint is without foundation. The affidavit of the officers upon

which the magistrate issued the search warrant contains a detailed recitation of all the facts, which we have hereinabove outlined, and, in our opinion, the circumstances presented fully justified the magistrate in reaching an independent conclusion that there was probable cause for believing the informer's statement to the officers as to the unlawful activities being conducted on and out of the premises. The statement of the informer that appellant and Gaillard were keeping narcotics at the Quince Street address which they were selling to addicts in New Orleans, detailing their method of the operation, was confirmed by the surveillance conducted by the officers of the residence and the activities of appellant and Gaillard which they subsequently observed. The investigative efforts support the inference that the informer was trustworthy and also indicate that a crime was being committed.

Counsel for appellant combines Bills of Exceptions 3, 4, 5, 6, 7, 11 and 12 for purpose of consideration of the case, declaring that the trial judge erred in overruling various objections made by defense counsel at the trial to the " * * * lengthy and highly detailed description and display of narcotics and narcotic paraphernalia and its use before the jury * * *" by a police officer testifying for the State. It is asserted that such detailed description and display of this physical evidence was neither material nor relevant to the charge that appellant merely possessed morphine tablets and that the design of the officer's testimony was to inflame and prejudice the jurors against appellant and to distract them from the actual facts of the case.

It is further asserted that the testimony of the State witness, John Koch, Director of the Crime Laboratory of the New Orleans Police Department, relative to the exhibition of various items of narcotics paraphernalia is in the same category, that is, they were introduced solely to prejudice and inflame the minds of the jurors against appellant and to obscure the fact that he was charged only with possession of morphine tablets. Counsel also proclaims that the introduction in evidence of various photographs and motion picture films taken of appellant inside and around the Quince Street residence, and the testimony of Officer Bernard Fruchtzweig with regard thereto, were likewise improper, since they were produced solely for the purpose of prejudicing appellant before the jury.

■■ All of these bills are insubstantial. The trial judge correctly states in his per curiam that the narcotic paraphernalia was relevant to show intent and guilty knowledge on the part of appellant. See R.S. 15:445 and R.S. 15:446. It is well-settled that guilty knowledge is an essential element of the crime of possession of

narcotic drugs. State v. Johnson, 228 La. 317, 82 So.2d 24 (on rehearing) (1955); State v. Maney, 242 La. 223, 135 So.2d 473 (1961); and State v. Vale, 252 La. 1056, 215 So.2d 811 (1968).

■ The various photographs and motion pictures taken by Officer Fruchtzweig at the Quince Street premises on May 5, 6, and 17, 1966 were likewise admissible to establish the fact that appellant was living at this address at the time of the search and seizure and, hence, had constructive possession of the morphine tablets which formed the basis of the charge. The pictures show appellant coming out on the front porch in his undershirt to pick up the newspaper, taking in the garbage can, and those taken on the day of the search and seizure exhibit him in partial undress (he was sleeping at the time the officers entered). They were relevant to prove the crime charged and to rebut appellant's contention that he was a casual visitor at the premises on the day of the search and seizure.

Bill No. 9 was reserved when the trial judge permitted, over objection, Police Officer Lauman to testify that, on May 18, 1966 the day following the arrest, he and Officer Brady took appellant and Gaillard to Charity Hospital in New Orleans. And Bill No. 10 was taken when the State, in connection with this testimony, introduced in evidence as an exhibit, a Charity Hospital Route Sheet diagnosing appellant's illness as withdrawal symptoms and classifying him as a dilaudid addict, together with a letter from the Director of the Hospital to the Criminal District Court, stating that appellant was brought to the hospital in a car by a detective on May 18 and that his illness was diagnosed as dilaudid addiction.

Counsel claims that the rulings below are in contravention of appellant's rights under the Sixth and Fourteenth Amendments to the Constitution of the United States " * * * in that no counsel was present to advise and assist him, and to protect his rights * * *" and, furthermore, inasmuch as he was in a sick and helpless state at the time of his appearance at Charity Hospital, he was necessarily in greater need of the advice and protection of counsel. This position is said to be supported by Escobedo v. Illinois, 378 U. S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); also Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). And counsel further asserts in brief that the Charity Hospital record is hearsay, violates his constitutional right of confrontation and also the physician-patient privilege provided by R.S. 15:-476.

■ · We find no merit in the contention. The testimony of the officer was clearly admissible as his evidence simply shows that appellant was transported to Charity Hospital at his own request where he was found to be suffering from withdrawal symptoms, i. e., nausea, et cetera, due to drug addiction and that he was given an injection to relieve his indisposition. The evidence was relevant to show appellant's intent to possess the narcotics.

■ The Charity Hospital Route Sheet and the letter of the Director establishing its authenticity were likewise admissible in evidence for corroboration of Officer Lauman's testimony and, independently, as tending to show that appellant knowingly possessed the morphine seized in the Quince Street raid for an illegal purpose, i. e., use as a drug addict.[1] These records are prima facie proof of the facts and findings stated therein and were admissible under R.S. 13:3714 providing that:

."Whenever a certified copy of the chart or record of any hospital in this state, signed by the director, assistant director, superintendent or secretary-treasurer of the board of administrators of the hospital in question, is offered in evidence in any court of competent jurisdiction, it shall be received in evidence by such court as prima facie proof of its

contents, provided that the party against whom the record is sought to be used may summon and examine those making the original of said record as witnesses under cross-examination."

■ The above-quoted statute supplies a complete answer to counsel's claim that the admission of the hospital record was in violation of the physician-patient privilege provided by R.S. 15:476, for that general statute is inapplicable to matters arising under the provisions of this special law, which was enacted in 1938, amended in 1952 by Act 519 and again amended and broadened in its scope by Act 161 of 1966.

Moreover, in view of the statute which sanctions the introduction of charts or records of all hospitals in this State, when properly certified and otherwise relevant to the proceeding, "* * * in any court of competent jurisdiction * * *" defense counsel's assertion in brief and argument here, that the records are hearsay and denied appellant his constitutional right to confrontation of the witnesses against him, is not well founded.

■ The right conferred under this statute is to be regarded as an exception to the hearsay rule.

And it is also plain that the statute does not violate appellant's right to confronta-

---

1. Drug addiction is made a felony under R.S. 40:962 and 981—See, also, State ex rel. Blouin, et al. v. Walker, 244 La. 699, 154 So.2d 368, cert. denied; Watkins v. Walker, 375 U.S. 988, 84 S.Ct. 521, 11 L.Ed.2d 474.

tion. On the contrary, the law recognizes and preserves this right. For the statute specially provides that " * * * the party against whom the record is sought to be used may summon and examine those making the original of said record as witnesses under cross-examination."

▬▬ Counsel has not assailed the statute as unconstitutional but, in view of the fact that he is asserting that appellant has been deprived of his right of confrontation, we think that, since the statute was neither cited by the State nor the trial judge in his per curiam, the question of its validity is inherent in counsel's objection. However, we hold that the rights accorded by the statute to summon and cross-examine the person or persons making the hospital record is adequate to satisfy the constitutional guarantee of an accused in a criminal case to be confronted by the witnesses against him. We note in this connection that this Court has heretofore approved the admission of hospital records under R.S. 13:3714 in a criminal case. In State v. Kelly, 237 La. 956, 112 So.2d 674 (1959), where Kelly was tried separately from his two accomplices for attempted murder, one of his bills was taken to the admission of a Charity Hospital report showing that Scott, an accomplice, had been shot in the back during the armed robbery, as a result of which robbery the charges of attempted murder arose: Kelly objected that the record was hearsay, among several other grounds.

▬▬ We held the hospital record admissible under R.S. 13:3714 aﬞ prima facie proof of its contents to corroborate the testimony of Harold Martin, the other accomplice who testified for the State.[2]

▬▬ Finally, counsel's claim that the evidence to which these bills pertain was violative of his rights under the Escobedo, Wade, Stovall and Miranda holdings is likewise untenable. Appellant's request for hospital treatment did not result from custodial interrogation, it was a voluntary plea by him for temporary relief from illness resulting from his drug addiction. We do not understand that the decisions

2. Indeed, it seems to be a general rule (although there are authorities to the contrary) that hospital records are admissible in evidence in criminal cases as an exception to the hearsay rule. See 23 C.J.S. Criminal Law § 845, pp. 300, 304, and § 851, pp. 328, 332. However, this was not the jurisprudence of Louisiana, prior to the enactment of R.S. 13:3714. State v. Danna, 170 La. 755, 129 So. 154 (1930). Although it has been held that documentary or record evidence otherwise admissible, does not in general violate the guarantee of confrontation, Louisiana had not consistently subscribed to this doctrine, prior to enactment of R.S. 13:-3714. State v. Joseph, 156 La. 682, 101 So. 21 (1924); also State v. Green, 161 La. 620, 109 So. 143 (1926); but see State v. Wilson, 141 La. 404, 75 So. 95 (1917); State v. Hardy, 174 La. 458, 141 So. 27 (1932); State v. Wilburn, 196 La. 113, 198 So. 765 (1940); and State v. Reinhardt, 229 La. 673, 86 So.2d 530 (1956).

relied on apply or extend constitutional protection to such communications under the conditions here presented.

Bill No. 13 was taken to the judge's denial to a motion for a directed verdict and a motion for a new trial. The basis of the motions is that the State did not produce sufficient legal evidence to support a verdict of guilty. This presents nothing for review as it relates to the alleged insufficiency of the evidence. This Court is without right or jurisdiction to review questions of fact in criminal cases. See State v. Hudson, 253 La. 992, 221 So. 2d 484.

The conviction and sentence are affirmed.

SANDERS, J., concurs in the result.