446 So.2d 334 (1984)
STATE of Louisiana
v.
Herbert LEE.
No. KA-1126.
Court of Appeal of Louisiana, Fourth Circuit.
January 12, 1984.
*336 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Joanne C. Marier, Asst. Dist. Atty., New Orleans, for plaintiff-appellee, State of La.
Bernard S. Dolbear, New Orleans, for defendant-appellant, Herbert Lee.
Before KLEES, GARRISON and CIACCIO, JJ.
KLEES, Judge.
On January 11, 1982, the appellant was charged by bill of information with aggravated *337 battery in violation of R.S. 14:34.[1] He waived his right to trial by jury and on September 16, 1982, the trial judge found him guilty as charged. On November 30, 1982, he was sentenced to serve seven years at hard labor.

FACTS
On November 5, 1981, at about 6:45 p.m., Curtis Robinson was shot and seriously wounded by a man he identified as the defendant, Herbert Lee. Robinson testified that on the morning of the shooting the defendant accosted him when he was on his way to work. The defendant accused Robinson of propositioning the defendant's girlfriend. Although Robinson denied this allegation, the defendant continued badgering him. As Robinson got on the bus to go to work, the defendant threatened to "get" him.
Sometime after 6:00 p.m., that same day, Robinson returned to his neighborhood to pick up his wallet which he had left at home. As Robinson approached the gate to his apartment, the defendant appeared from around the corner with a shotgun in his hand. From a distance of about 10 feet, the defendant shot Robinson in the leg. Robinson fell to the ground, and the defendant put the shotgun to Robinson's head and asked him if he "wanted more." The defendant then warned Robinson to stay away from his (the defendant's) girlfriend, and he fled.
Curtis Robinson further testified that he was subsequently taken to Charity Hospital, where he remained for over two months while fourteen operations were performed on him. He testified that in the aftermath of the shooting, his keys to his delivery truck were taken and his truck which he had parked a few blocks from the scene was stolen. He asserted that he had no doubts that the defendant was the man who shot him.
A shotgun, which Robinson identified as resembling the gun used to shoot him, was found two days later in a backyard in the neighborhood. The police determined that the gun was functional, but no tests were run to see if it had been recently fired. There was no evidence to connect this gun to either the shooting or the defendant.
Tanya Robinson, the victim's wife, testified that at about 6:45 p.m. she heard a gunshot outside of their apartment. She looked out of the back door and saw the defendant standing over a person lying on the ground, holding a shotgun on that person. Because a washing machine obstructed her view, she could not see who was lying on the ground. She heard the defendant ask the person on the ground if he "wanted more" and she heard the person reply "no". The defendant left. Mrs. Robinson then heard her name being called, went outside, and found Mr. Robinson lying wounded on the ground.
Marjorie Wheeler, who lives near the scene of the shooting, testified that at about 6:45 p.m. she was standing on her porch and she saw the defendant and his "wife" standing in the street. She heard the defendant say that he and Robinson had had "a fuss" earlier that morning. Ms. Wheeler testified that she then saw Robinson walk by on his way to his house. The defendant went around the corner and she went inside her house. She then heard a gunshot. On cross-examination, Ms. Wheeler admitted that she had told an insurance adjuster that she saw the defendant shoot Robinson. She testified that she did not see the shooting, but was merely repeating what others had told her.
Mary Ann Pollard, the defendant's "common law wife", testified that on the morning of the shooting the defendant went with his father to Pontchatoula to work on his sister's house. She said that on the evening of the shooting, she was sitting on the steps drinking beer when she "heard *338 words" coming from behind a truck. She went to the end of the truck and saw Robinson and a "little dude" arguing about a cocaine sale. She then heard a shot and saw the "little dude" running away.
Later, she testified, the police came to her house looking for "Herbert Hatten", the defendant's son. She said that the defendant did not return home that night because he had gone fishing and drinking after he finished working on his sister's house. She later contacted the defendant and told him that the police were looking for him.
Ms. Pollard testified that she had psychiatric problems but was not taking any medication at the time of the shooting. She said that the defendant was a jealous man. She denied telling him that Robinson tried to rape her. She testified that she had some problems remembering things that happened in the past. She had a prior conviction for receiving stolen goods.
The defendant, Herbert Lee, testified that on the morning of the shooting he approached Robinson, seeking to end the bad feelings they had for each other as a result of an earlier argument. Robinson rejected his offer of friendship. Lee then left the city with Darlene Maples and John Simmons to go fishing off the Manchac Bridge. They fished until dark, then returned to Maples' and Simmons' house to cook the fish. Lee spent the night at their house.
The next day Lee learned that the police wanted him. He testified that he went to both Central Lock-up and the Sixth District police station and was informed at both places that he was not wanted. He then went to Pontchatoula for a week. When he came back to New Orleans, he again went to the Sixth District, where he was then arrested.
Lee testified that he did not own any guns. He knew Robinson and Ms. Pollard had dated before, but he was no longer jealous. He testified that he did not know that Ms. Pollard and Robinson had seen each other the night before the shooting. Lee admitted having prior convictions for simple burglary and for a "pistol charge".
On rebuttal, Will Rumley testified that on the day of the shooting he saw the defendant in the neighborhood of the shooting at around 3:30 p.m. and again at around 6:00 p.m.

Assignments of Error I. and IV.
The appellant's assignment of error numbers one and four deal with the State's use of a photograph, exhibit S-3, to portray the scene of the shooting. By his assignment of error number four, the appellant alleges that because the photograph "clearly distorts the amount of light present and available to the alleged witnesses," its admission into evidence was error. However, the appellant does not even attempt to prove that the photograph "clearly distorts" the lighting conditions. The only mention of such distortion in the entire transcript is by the defense attorney himself who was not present at the scene anytime near the time of the shooting. The appellant's mere allegation of the photograph's distortion of the lighting conditions is not a sufficient basis for this court to conclude that the trial court erred by admitting the photograph into evidence. The appellant's assignment of error number four is without merit.
By his assignment number one, the appellant alleges that the State committed reversible error by failing to mention in its opening statement that it intended to introduce S-3, the photograph of the shooting scene. As support of this allegation, the appellant contends that the State could have somehow subpoenaed the New Orleans Public Service, Inc. (who supplied the lighting at the scene) to present "an accurate dispassioned evaluation" of these lighting conditions. The appellant contends that the State erred by not indicating in its opening statement that the use of S-3 would be it's "sole means of presenting to the Court the lighting present at the crime scene."
Article 766 of the Code of Criminal Procedure provides that the State's opening *339 statement "shall explain the nature of the charge, and set forth, in general terms, the nature of the evidence by which the state expects to prove the charge." See State v. Brown, 428 So.2d 438 (La.1983). Therefore, the State was not required to mention in its opening statement that it would introduce S-3 as the "sole means" of showing the lighting conditions at the scene.
The appellant's other argument, that the State should have subpoenaed someone from N.O.P.S.I. to describe the lighting of the scene, is equally without merit. The State did not err by choosing instead to introduce a picture of the scene.
Accordingly, assignments one and four are without merit.

Assignments of Error II. and VIII.
The appellant's assignments of error numbers two and eight both deal with statements made to an insurance adjuster concerning the theft of Curtis Robinson's liquor delivery truck that occurred sometime around the time of the shooting. By his assignment number two, appellant alleges that the State should have supplied him with copies of the statements made by Michael and Cheryl Wheeler, who did not testify at trial, which would have allowed him to show that Marjorie Wheeler's testimony was based upon "hearsay-neighborhood backfence gossip." By assignment number eight, he alleges that these statements would have shown a possible motive for someone else to have attacked Robinson, and as such they were exculpatory and should have been supplied to him.
The United States Supreme Court has held that the Fourteenth Amendment mandates that the prosecution must disclose to the defense evidence favorable to the defendant if such evidence is material to his guilt or punishment. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), the Court ruled that the prosecution must disclose such evidence for the impeachment of a witness whose testimony (and credibility) may be determinative of the accused's innocence or guilt. Upon receiving a specific request for such material, the prosecution must either disclose it to the defense or give it to the judge for an in camera inspection of the material, United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). See also State v. Oliver, 430 So.2d 650 (La.1983); State v. Perkins, 423 So.2d 1103 (La.1982).
Here, the statements to which the appellant refers were statements apparently given to an insurance agent investigating Robinson's workman's compensation claims and the theft of his truck. The defense counsel was supplied at trial with a copy of such statement made by Marjorie Wheeler and he was given a short recess in order to inspect the statement. He then cross-examined Ms. Wheeler as to this statement, wherein she claimed she had seen the appellant shoot Robinson. At trial, she testified that she had not seen the shooting and that the statement she gave to the insurance adjuster contained information that she had learned from other people who saw the shooting. A statement of Tanya Robinson was also produced at trial. However, no mention was made at trial of the existence of such statements given by Michael and Cheryl Wheeler.
The appellant argues that these statements were exculpatory because they showed that Michael and Cheryl Wheeler were part of a group of people who gave false information to an insurance adjuster in order to help Robinson get a better workman's compensation award. He contends that these statements, together with the fact that Robinson's truck was missing, "clearly establishes an entire different basis for his alleged attack by a person other than the defendant."
Apparently these statements were not produced. In fact, there are no indications in the record that the appellant ever requested their production after he learned of their existence. If these statements contain what the appellant alleges they contain, such contents would not be exculpatory. *340 On the contrary, it is possible that the information concerning the shooting that was given by Marjorie Wheeler to the insurance adjuster may have come from Michael or Cheryl Wheeler. As such, the proposed contents could have been inculpatory in nature.
The appellant has not shown that these unrequested statements were exculpatory. We conclude that the State was under no obligation to supply the defense with copies of these statements. Assignments of error numbers two and eight are without merit.

Assignment of Error III
In his assignment of error number three, the appellant contends that the trial court erred by admitting into evidence a shotgun found a few blocks from the shooting scene a few days after the shooting. Testimony was taken from an eight-year-old boy who was present when his cousin found the shotgun in his back-yard, as well as from the policeman who retrieved the gun from the place where the boys found it, and from the officer at the crime lab who determined only that the gun was operational more than four months after it was found.
Rodney Robinson, the child who was present when the shotgun was found, could not identify the policeman who retrieved the gun. However, he did testify that the gun was left where it was found until the police arrived to pick it up. Officer Pizzo then testified as to the time and location of his retrieval of the shotgun.
The State did not attempt to establish that the shotgun belonged to or was used by the appellant. However, Curtis Robinson testified that the gun looked like the one which the appellant used to shoot him.
The Louisiana Supreme Court has held that the trial court has wide discretion in its determination of the relevancy of the evidence presented, and such determination will not be overturned absent clear abuse of this discretion. State v. Chaney, 423 So.2d 1092, 1099 (La.1982); State v. Huizar, 414 So.2d 741, 748 (La.1982); State v. Bates, 397 So.2d 1331, 1335 (La.1981). The Court has noted that "[t]here should be a logical or rational connection between the fact which is sought to be proved and the fact which is at issue in the case." State v. Huizar, at 748.
In a case similar to the one at bar, State v. Manieri, 378 So.2d 931 (La.1979), the trial court admitted into evidence three knives which were "similar" to the murder weapon but which were not used in the slaying. The Supreme Court held that the trial court erred by admitting the knives into evidence. However, such error was harmless because no effort was made to connect the knives to the crime or to the defendant, and a State witness testified that the knives were not the murder weapon.
In this case, the shotgun was similar to the one used in the shooting, and it was found near the scene a few days after the shooting. No attempt was made to tie the gun to the appellant. Unlike Manieri, there was no testimony here which excluded the shotgun from being the weapon used in the shooting.
The fact finder in Manieri was a jury. The Supreme Court reasoned that the admission into evidence of "similar" weapons was potentially prejudicial because the jury may automatically assume that the weapons were the ones used in the perpetration of the crime and therefore the weapon's prejudicial effect would outweigh their probative value. Here, the fact finder was the trial judge, and we conclude that such considerations as were employed by the Supreme Court in Manieri are not applicable to this case. Although admitting the shotgun into evidence may constitute error, there is no showing that the trial judge based his judgment on the fact that the shotgun admitted into evidence was the one actually used in the commission of the crime. In light of this, as well as the overwhelming evidence brought against the defendant, we conclude that the admission into evidence of the shotgun and the testimony concerning it did not constitute reversible error.

*341 Assignment of Error V

By his assignment of error number five, the appellant alleges that the trial court erred by allowing the State to introduce into evidence medical records of the victim from Charity Hospital. The appellant sets forth two grounds for his contention: (1) the custodian of the records failed to appear to authenticate these records; and (2) the records "did not accurately reflect the necessary serious wounds sustained by the victim to place him in the category of victim for the crime for which the defendant was charged."
Appellant's second ground for objection was not raised at trial. Our Supreme Court has long held that a new basis for an objection cannot be raised for the first time on appeal. State v. Feeback, 414 So.2d 1229 (La.1982); State v. Ford, 349 So.2d 300 (La.1977). Therefore, this contention is not properly before this court.
The appellant's other contention, that these records from Charity Hospital were not adequately authenticated, was raised at trial. Attached to the records from Charity Hospital was a letter of authentication. The trial court ruled that the records were duly authenticated and they were admitted into evidence. The defense attorney did not request at trial that the State produce the man who authenticated these records.
Certified copies of hospital records are admissible in evidence as prima facie proof of their contents if signed by the administrator or the medical records librarian of the hospital from which the records were received. R.S. 13:3714. Section 3714 further provides:
the party against whom the record is sought to be used may summon and examine those making the original of said record as witnesses under cross-examination
The Louisiana Supreme Court has held that R.S. 13:3714 is applicable to criminal cases and as long as the statutory requirements for authentication are satisfied there is no denial of the accused's right to confront witnesses against him. State v. Trahan, 332 So.2d 218 (La.1976); State v. O'Brien, 255 La. 704, 232 So.2d 484 (1970).
The trial court in the case at bar found that the Charity Hospital records had been sufficiently authenticated. By the provisions of R.S. 13:3714, the defense could have subpoenaed the person who authenticated these records to appear at trial for cross-examination. He could have even asked for a recess to attempt to contact this person if he was unaware of the existence of the records and their authentication until they were presented at trial. The appellant's contention that the State was obligated to subpoena this person for the defense's cross-examination at trial is contrary to the wording of the statute and is without merit.
The appellant's last contention is that the State should have supplied the name of the compiler of these records "as under Article 768." C.Cr.P. Art. 768 has no application here because it pertains to the State's obligation to advise the defense in writing prior to opening statements of its intent to introduce into evidence a confession or inculpatory statement made by the defendant.
Accordingly, assignment of error number five has no merit.

Assignment of Error VI
The appellant's assignment of error number six deals with the sufficiency of evidence used to convict him of aggravated battery. Specifically, he alleges: (1) that the State failed to prove that the shotgun entered into evidence was "similar" to the one used to shoot the victim, and (2) that the evidence presented of the victim's injuries failed to exclude the possibility that he could have received these injuries from a source other than the gunshot.
In assessing the sufficiency of evidence to support a conviction in a direct evidence case, the reviewing court must determine whether, viewing the facts in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable *342 doubt. Jackson v. Virginia, 443 U.S. 307, 309, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Fuller, 414 So.2d 306, 310 (La.1982).
Aggravated battery is defined as "a battery committed with a dangerous weapon". R.S. 14:34. Battery, as defined by R.S. 14:33, includes "the intentional use of force or violence upon the person of another." In the instant case, the victim was shot with a shotgun. Medical records were introduced which apparently showed that shotgun pellets were taken from Robinson's leg. Mrs. Robinson saw the appellant standing over someone with a shotgun in his hand. Robinson himself testified that the appellant shot him with a shotgun. Apparently, the judge chose not to believe the appellant's and his wife's testimony that he was out of town on the night of the shooting. Viewing the evidence in the light most favorable to the prosecution, the judge could have found the appellant guilty beyond a reasonable doubt. State v. Trahan, 416 So.2d 65 (La.1982); State v. Brown, 395 So.2d 1301 (La.1981).
The appellant's contention that the State failed to prove that the shotgun introduced into evidence was "similar" to the one used to shoot the victim is groundless. The victim testified that the weapon used to shoot him looked like the one that was shown to him at trial. Even if he had failed to so identify the shotgun's similarity to the weapon used in the shooting, such failure should not have resulted in an insufficiency of evidence to convict him of aggravated battery because the State was not required to produce either the weapon used or a shotgun similar to the weapon used in the offense. Such production was not an essential element of the crime.
The appellant's other contention, that the evidence presented of the victim's injuries failed to exclude the possibility that he could have received these injuries from a source other than the gunshot, is equally groundless. The State merely had to prove that an "intentional use of force or violence upon the person of another" had occurred through the use of a dangerous weapon. There was direct evidence that the victim's injuries resulted from the shooting therefore, the State was not required to exclude affirmatively every hypothesis of how the victim could have received his injuries. This assignment of error is without merit.

Assignment of Error VII.
By his assignment of error number seven, the appellant contends he was denied due process because two of his subpoenaed alibi witnesses failed to appear for either day of trial. He points to the failure of the criminal sheriff's office to find these witnesses as support for his contention.
According to the trial transcript, the defense attorney was informed during the first day of trial that the address of these alibi witnesses given to the criminal sheriff, 2709 Valmont Street, did not exist. After consulting with the appellant, the defense attorney then informed the court that he would provide a man who knew where these witnesses lived to go with a sheriff's deputy to find these people. The trial was resumed after a break for lunch.
At the beginning of trial the next day, the appellant testified that after trial ended the previous evening he attempted unsuccessfully to locate these witnesses. He did manage to find one of the witnesses early the next morning. The witness apparently was drunk and told the appellant that he could not come to court because he had to take care of something "personally". The appellant remained with him until time to leave for court. The witness would not give the appellant the address of the other alibi witness. The trial then resumed without objection by the defendant.
A defendant's right to compulsory process to obtain witnesses in his behalf is guaranteed by both the Sixth Amendment to the United States Constitution and Article I, Section 16 of the 1974 Louisiana Constitution. Article 731 of the Code of Criminal Procedure provides that the trial court "shall issue subpoenas for the compulsory attendance of witnesses at hearing or trials when requested to do so by the state or the defendant." State v. Latin, 412 So.2d 1357 (La.1982).
*343 Here, the appellant was given the opportunity to subpoena these alibi witnesses. However, the address that he gave the criminal sheriff's office did not exist. Apparently a sheriff's deputy, accompanied by someone supplied by the defense, attempted to find these witnesses on the first day of trial. The appellant himself found one of the witnesses on the second day of trial. However, after notifying the court that the witness refused to come to court, the appellant did not request that the court order the deputies to bring this witness into court. He did not request the issuance of an instanter subpoena. He did not object when the trial was resumed without any further action being taken to secure the presence of this witness. In view of this we conclude that the trial court did not err by proceeding with the trial in the absence of any objection by the defendant. In addition, C.Cr.P. Art. 841 provides that an error not objected to at trial cannot be raised on appeal. This assignment of error lacks merit.

Assignment of Error IX.
By his ninth assignment of error, the appellant contends that the trial court erred by denying his Motion for New Trial based upon the preceding eight assignments of error and the testimony of the appellant's son (who did not testify at trial).
At the hearing on the Motion for New Trial, the appellant's son, Herbert Hatten, testified that he was with Ms. Pollard on the evening Curtis Robinson was shot. His testimony paralleled that given by Ms. Pollard in that he testified that Robinson was shot by someone during a drug transaction, but it was too dark to see who the perpetrator was. He also testified that his father knew his whereabouts from the time of the shooting until the time of trial.
Art. 851(3) of the Code of Criminal Procedure mandates that a new trial be ordered where:
New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;
In his reasons for denial of the appellant's motion, the trial judge noted that Herbert Hatten's testimony was discoverable prior to trial due to the close relationship of Mr. Hatten, his mother, and the appellant. The judge noted that Mr. Hatten's testimony would not have changed his verdict.
In reviewing a trial court's ruling on the impact "newly discovered" evidence would have had on the verdict, such ruling should not be disturbed in the absence of a clear abuse of the trial court's discretion. State v. Chapman, 436 So.2d 451 (La.1983). Here, the trial judge was the fact finder, and his opinion that Mr. Hatten's testimony would not have changed his verdict cannot be said to have been an abuse of his discretion. The trial court did not err in refusing to grant the appellant's Motion for New Trial on this ground.
For the reasons discussed above, the appellant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] R.S. 14:34 defines aggravated battery as a "battery committed with a dangerous weapon." Battery is defined by R.S. 14:33 as "the intentional use of force or violence upon the person of another; or the intentional administration of a poison or other noxious liquid or substance to another."