HIGGINS, Justice.
 

 The accused was indicted for murder, convicted thereof by the jury, without capital punishmeiit, and sentenced by the court to serve- the remainder of his life in the State Penitentiary at hard labor.
 

 The defendant appealed and urges twenty-two bills of exception, which were reserved during the trial, for the purpose of having the verdict and the sentence annulled.
 

 It appears that about midnight on April 12, 1935, a young colored woman named Mildred McCarty was killed at the Airport at Hodge, Jackson Parish, La. A bullet wound had been inflicted directly in the top of her head and one over each nipple of her breasts, all of them ranging downward through her body. There was also a bruise on her right wrist. Eye witnesses informed the sheriff that the killing had been done by a negro man named Selma Smith, the defendant, but after an intensive search, the authorities were unable to locate him.
 

 On September 12, 1935, the grand jury indicted the defendant, charging him with the crime of murdering Mildred McCarty. In the Fall of 1938, the defendant was taken into custody near the Town of Camden, Arkansas. At the time of his arrest he denied his identity but when confronted by the Chief of Police of the Town of Ruston, La., who knew him, he admitted that he was Selma Smith. On March 25, 1939, he appeared in court with his attorney and after arraignment, entered a plea of not guilty. On motion of the district attorney, the case was set for trial on April 10, 1939.
 

 The State proved that a few weeks before her death, Mildred McCarty, while living in Ruston, La., had been keeping company with Selma Smith. About two weeks before she was killed, the couple became estranged and she tried to evade him but upon the defendant persisting in his advances, she moved to Hodge, La., to live with her mother, in order to get away from him. Several days prior to the killing and up to and including the day thereof, the defendant, while working at Ruston, La., repeatedly made the statement to four witnesses, his colored friends and acquaintances, both men and women, that Mildred McCarty was going to live with him or she,
 
 *769
 
 would not live with anyone else, as he would kill her. On April 12, 1935, about 4 o’clock p.m., in the Town of Ruston, the accused told a witness that he was going to catch the “turn around freight train” that night and was going to Hodge, La., to bring back Mildred McCarty or kill her. On April 12, 1935, he cashed his pay check with a witness and stated that he was going to Hodge, La. He then went to a barber shop and got a hair cut, telling the barber he was going to Hodge, La. About 6 o’clock p.m., the same day, he went to the home of another witness where he had left his pistol, armed himself with it and at 10 o’clock p.m., boarded a freight train going to Hodge, La. At about 11 o’clock that night, he met Will Gray, a State witness, near the Hodge Airport and asked him if he knew Mildred McCarty. Upon being informed by the witness that he did not know her, the accused proceeded to the edge of the Airport to a place known as “Oak Grove negro quarters.” It appears that Mildred McCarty was playing cards with another young negro woman named Nina Gray. The accused observed Mildred through the window. He then concealed himself between two houses nearby and waited. About midnight, when the two colored women left the house and started home, the accused rushed out from his place of concealment and grabbed Mildred. The victim, calling the defendant “Selma,” begged him to “turn her loose” and not to hurt her arm, saying that she would g<5 with him, but in spite of her pleas, he dragged her between the two houses and about seventy-five yards out into the Hodge Airport, where she pleaded for her life. He then placed his left arm around her neck and with a pistol in his right hand, shot her, once downward through the top of her head and once over each nipple of her breasts. He fled and while making his escape ran by one Monk Ford, who knew him and had heard the victim pleading for her life and had started to her rescue. On April 13, 1935, the defendant was seen between the Towns of Hodge and Arcadia, La., running into the woods. The sheriff continued his diligent search until the defendant was arrested in Camden, Arkansas, where he was identified. While in jail, he sent for one of his friends, John Heard, and endeavored to persuade this witness to swear that he, the accused, was in Camden, Arkansas, at the time of the murder.
 

 The first three bills of exception were reserved to the trial judge’s overruling of objections to questions propounded to the Coroner of the Parish by the district attorney as to the locations of the wounds upon the body of Mildred McCarty. The defendant’s counsel contended that the evidence was irrelevant and immaterial and tended to prejudice the rights of his client. When the- Coroner was called as a witness by the State, he qualified as an expert medical witness, as well as the Coroner of Jackson Parish, and was interrogated as to the location and extent of the wounds upon the body, which proposed testimony was fully covered by the district attorney in his opening statement. Counsel for the defendant states in his brief, upon which the case is submitted, that the doctor never qualified as an expert and, therefore, was confined only to the statements made in his proces
 
 *771
 
 verbal as Coroner. The record shows and the trial judge in his per curiam states that the witness had qualified as an expert. It is our opinion that the testimony was material and relevant and admissible in evidence.
 

 Bill No. 4 resulted from the defendant’s counsel protesting against the district attorney using leading questions. The record and the trial judge’s per curiam show that the district attorney was admonished by the court to refrain from asking leading questions and the jury was instructed in each instance to disregard the questions. Counsel for the defendant neglected to have the questions and answers of the witnesses taken down and does not point out in what way the accused’s rights were prejudiced. Therefore, there is nothing before the Court to review. State v. Cole, 161 La. 827, 109 So. 505; State v. Russell, 167 La. 1010, 120 So. 629.
 

 Bills Nos. 5 and 6 were predicated on the fact that the district judge permitted the witnesses to state that they had seen the accused in the vicinity of the Airport at 11 o’clock p.m., the night of the killing, and he had inquired for Mildred McCarty, and that he was later seen fleeing from the scene of the crime, when the district attorney failed to include these subjects in his opening statement to the jury. The judge, in his per curiam, states that the witnesses had already answered at 'the time the objection was made and, also, that the district attorney, in his opening statement, had covered the matters. The record sustains the district attorney and the trial judge in their statements and, therefore, there is no merit in these bills.
 

 Exceptions Nos. 7, 8, 9, 10, 11 and 12 are based on the fact that the trial judge permitted the State witnesses to relate the statements made to them in Ruston by the accused. His counsel contends that the questions were irrelevant, immaterial and inadmissible and were not covered by the district attorney in his opening statement and further was an attempt to prove a confession without laying the proper foundation.
 

 The purpose of this evidence was to show preparation and malice, defendant having stated that he was going to Hodge, in order to bring back Mildred McCarty and if she refused to live with him, she could not live with anyone else, as he would kill her. The testimony was obviously relevant and material. It was also covered by the district attorney in his opening statement. The State was not attempting to prove a confession, for it appears that the defendant at all times denied that he had committed the crime. The introduction of the defendant’s statements or admissions was to’ show preparation and malice and was both material and admissible for those purposes.
 

 Bills Nos. 13 and 14 were reserved to the trial court’s ruling in permitting John Heard to testify that the accused sent for him and asked him to say that he (the accused) was in Camden, Arkansas, at the time the crime was committed. It is said that this was equivalent to admitting a confession in evidence and, as the district
 
 *773
 
 attorney did not, m Ms opening statement, tell the jury he would offer the accused’s confession, the testimony was inadmissible. The trial judge retired the jury while hearing the evidence on this point and concluded that the statement was not a confession. He ruled that the testimony was . relevant and admissible tending to show guilt on the part of the accused. We find no error in his ruling.
 

 Bills Nos. 15, 16, 17 and 18 were reserved when the district judge permitted several witnesses to testify over the defendant’s objection that the defendant stated that Mildred McCarty Was going to live with him or she would not live with anyone else, as he would kill her. It is also stated that this testimony was immaterial and irrele-' vant and not covered by the district attorney in his opening statement. The trial judge ruled that the testimony was material and relevant to prove malice, and that the district attorney had sufficiently covered the subject'in his opening statement. It is our view that the testimony was material and relevant and the record shows that the district attorney in his opening statement covered the matter.
 

 Bills Nos. 19 and 20 were taken when the trial judge allowed two State witnesses to testify, over objection, that on April 12, 1935, the accused had cashed a check, armed himself and stated that he was going to Hodge, La. This testimony was relevant and material and was covered by the district attorney in his opening statement.
 

 Bill No. 21 was based upon the court’s ruling in permitting the State’s witnesses, over the defendant’s objection, to testify that defendant had been a fugitive from justice, denied his identity when arrested, and was later identified by witnesses who knew him. Defendant claims that this evidence was irrelevant, immaterial and prejudicial to his rights and that it was not sufficiently indicated in the opening statement of the district attorney. The testimony is obviously material and relevant and the record shows the subject was amply covered by the district attorney in his opening statement to the jury.
 

 Exception No. 22 was reserved when the trial judge overruled a motion for a new trial. Defendant contends' that he was deprived of evidence which would have shown prejudicial error, due to the neglect of the judge to have, taken down and the official court reported to write down the questions, objections • and rulings of the court and the answers of the witnesses. The trial judge, in his per curiam, stated that the court reporter was an experienced and efficient official and that throughout the trial he took down all questions, objections and rulings of the court and the answers of the witnesses, as requested by counsel for the defendant, and that the transcription of the evidence filed in the record is complete and correct in every respect and free from ambiguity. There is no doubt that an accused . is entitled to have the testimony taken down, in order that his rights to an appeal might be protected. State v. Reed, 180 La. 741, 157 So. 547. In the instant case; the record shows that the defendant was in no way denied this right and that the testimony, the objections and the rulings of the court were
 
 *775
 
 taken down by the stenographer when requested by defendant’s counsel and that this was done in an accurate manner. Therefore, this bill is likewise without merit.
 

 For the reasons assigned, the verdict of the jury and the sentence of the court are affirmed.