290 So.2d 273 (1974)
STATE of Louisiana
v.
Wiley R. FALLON.
No. 53371.
Supreme Court of Louisiana.
January 14, 1974.
Concurring Opinion February 4, 1974.
On Application For Rehearing February 15, 1974.
*279 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Charles A. Marvin, Dist. Atty., for plaintiff-appellee.
James E. Franklin, Jr., Shreveport, for defendant-appellant.
SUMMERS, Justice.
This appeal arises out of the prosecution of Wiley R. Fallon for the murder of his wife Jeanne on January 6, 1971 in the Heart O'Bossier Shopping Center in Bossier City, Louisiana. After trial by jury, Fallon was found guilty of manslaughter and sentenced to serve twenty-one years imprisonment at hard labor. One hundred eleven bills of exceptions were reserved at the trial and are the subject of sixty specifications of error urged in the following order in support of Fallon's appeal in this Court.

Bills 1, 2, 3, 4 and 63
These bills present two questions: 1) Whether the trial judge erred in refusing to recuse the assistant district attorney Henry Brown; and 2) whether the assistant district attorney should have been excluded from the court room or from where he could see or hear the proceedings.
Aside from the fact that the record discloses no written motion to recuse the assistant district attorney setting forth the grounds therefor, which written motion is required by Article 681 of the Code of Criminal Procedure, "Recusation is a proceeding which is, by the nature of the procedures followed, not applicable to the assistant district attorney." Official Revision Comment, La.Code Crim.Proc. art. 680. Cf. State v. Woods, 283 So.2d 753 (La.1973).
There is likewise no merit to the contention that the assistant district attorney should have been excluded from the courtroom or from where he could see or hear the proceedings as required by Article 764 of the Code of Criminal Procedure. Henry Brown, the Assistant District Attorney, was actively engaged as an assistant in the prosecution of this cause. He was subpoenaed as a witness on behalf of the defendant. Under the circumstances, the refusal of the trial judge to sequester Brown was not arbitrary or unreasonable.
Because defense counsel desires to interrogate as his witness an assistant district attorney actively engaged in the trial does not mean that the defense may compel his sequestration and disrupt the trial. It is permissible for the trial judge in such cases to exempt the assistant district attorney from the rule of sequestration "in the interest of justice"that is, to conserve time and to avoid disrupting the orderly proceeding of the trial.
No claim is made that the purpose of Article 764 requiring exclusion of witnesses from the courtroom has been violated. The purpose of Article 764 requiring sequestration of witnesses is to prevent their being influenced by testimony of prior witnesses and to strengthen the role of cross-examination in developing the facts. State v. Raymond, 258 La. 1, 245 So.2d 335 (1971), cert. denied, 404 U.S. 805, 92 S.Ct. 101, 30 L.Ed.2d 38; State v. McAllister, 253 La. 382, 218 So.2d 305 (1969). Other than rank conjecture on the part of defense counsel, there is no showing that the purpose of the Article has been violated in this case. State v. Hopper, 251 La. 77, 203 So.2d 222 (1967), vacated 392 U.S. 658, 88 S.Ct. 2281, 20 L. Ed.2d 1347, aff'd. and reinstated on remand 253 La. 439, 218 So.2d 551, cert. denied, 396 U.S. 1012, 90 S.Ct. 545, 24 L.Ed. 2d 504; State v. Lewis, 250 La. 876, 199 So.2d 907 (1967).

*280 Bills 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, and 16

These bills present the question: May persons who have attained the age of eighteen, but who are not yet 21 years old serve on a petit jury? The trial judge was of the opinion they could not and ruled they were not qualified.
At the time in question, March 1972, when this jury was selected, Article 401 of the Code of Criminal Procedure provided in part that "In order to qualify to serve as a juror, a person must:. . . be at least twenty-one years of age . . . ." This qualification was, at the time, one of long standing in the law of this State. However, the issue presented by these bills arises because subsequent legislation, in effect at the time these bills were perfected, amended the age qualification to eighteen. (Act 695 of 1972), and also amended Article 37 of the Civil Code by Act 98 of 1972 to provide:
Persons of the age of eighteen years shall be considered of full age and until they attain that age, shall be minors. A person who is eighteen years of age or older shall be regarded as being fully emancipated, shall be considered adults and shall have the same rights, duties, responsibilities and capacities as persons who are twenty-one years of age or older.
Although the trial judge has not assigned reasons for his ruling, we agree that neither Act 695 of 1972 nor Act 98 of 1972, effective in July 1972, had the effect amending the age qualification for jury service retroactively. By clear constitutional command "No ex-post facto law. . . shall be passed . . . ." La.Const. art. IV, ¶ 15.

Bill 17
When the prospective juror Festervan was called to the bar by the trial judge in order to ascertain his qualifications, Festervan stated that he was and had been a school bus driver for four years. When he was excused from service, defense counsel objected and this bill was reserved. The ground for objection was that the exemption of school bus drivers from jury duty was arbitrary and unreasonable. La. Code Crim.Proc. art. 403.
Counsel has advanced no reasons or argument, and the bill of exceptions makes no showing, to support the claim that the statute (La.Code Crim.Proc. art. 403) exempting school bus drivers is arbitrary and unreasonable. Although many good and valid reasons occur to the Court for granting such an exemption, the Legislature's wisdom needs no support and will not be questioned on the subject.
Exclusion of school bus drivers when they claim the exemption from jury service violates no constitutional guarantee. And no error occurs by this exclusion when no imbalance results in a cross section of the population from which the jury is drawn. State v. Clifton, 247 La. 495, 172 So.2d 657 (1965).

Bill 18
Believing that the prospective juror Charles Scott may have been under criminal interdiction at the time, the trial judge excused him from service. This action was objected to by the defense on the ground that an interdiction had not been shown.
The colloquy between Scott and the trial judge disclosed that Scott had recently been sent to the state hospital for the mentally ill at Pineville upon advice of a medical doctor. After being there for a week under observation, he was returned to jail. The evidence to support the ruling is admittedly sparse; however, no effort was made by the defense to disprove the facts or the obvious inference the judge drew from the statements of the prospective juror.
In matters of this kind, the findings of the trial judge are entitled to great weight.
*281 It is more likely that the judge would have erred in permitting Scott to serve on the jury in this serious criminal case. The ruling will not be disturbed under the circumstances. La.Code Crim.Proc. art. 787; State v. Jugger, 217 La. 687, 47 So.2d 46 (1950).

Bills 19, 23, 27, 28, 31, 32, 33, 34, 35, 36, 39, 40 and 41
All of these bills were reserved when prospective jurors were excused on a challenge for cause by the District Attorney because they avowed they had personal beliefs or moral or conscientious scruples against the imposition of the death penalty. Defense counsel asserts that excusing jurors on these grounds violates the Fourteenth Amendment to the Constitution resulting in the denial of a fair and impartial trial to the accused Fallon. The decision in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), is cited as authority for the defense position.
This case was tried in March 1972. In June of that year the United States Supreme Court decided Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), declaring the death penalty unconstitutional as then imposed and administered under statutes similar to Louisiana's enactments on the same subject. Thereafter those provisions of Louisiana's statutes imposing the death penalty were declared unconstitutional. State v. Franklin, 263 La. 344, 268 So.2d 249 (1972). As pointed out, Fallon was not found guilty of murder and the death penalty was not imposed. Therefore, the rule announced in Witherspoon designed to reprobate the "hanging jury" is not relevant to this conviction. Furthermore, the death penalty cannot be imposed for this offense for there is no valid statute applicable to this case which authorizes the death penalty. State v. Foy, 278 So.2d 38 (La. 1973). Compare La. Code Crim.Proc. art. 798(2); La.R.S. 14:30 as amended.

Bill 20
During voir dire examination of a prospective juror, defense counsel sought to explain to the prospective juror in lay terms the legal definition of manslaughter. In doing so, defense counsel stated that manslaughter was a homicide which would be murder but for the fact that the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive the average person of his self-control and cool reflection. He then asked the prospective juror if he understood those terms, and when the juror answered that he did not, defense counsel proceeded as follows:
Well, basically what this means is, if a man is provoked to the extent that he would lose his self control and would no longer be calm, would no longer have cool reflection, and while he is so provoked, he kills somebody, then this is manslaughter. It is not the same thing as murder. Murder is premeditated cold blooded act of killing someone else.
At this time the District Attorney interrupted, observing that the correctness of the statement was questionable. Whereupon the trial judge agreed that defense counsel could continue with his efforts to explain the law to the prospective juror, so long as it was done correctly. He then said, "but, I must state that murder under our law is not athere is no element of premeditation in it, as you know." Defense counsel objected to the statement and reserved this bill. In brief the argument is made that the error consisted of "commenting on the law." No other argument is made in support of this bill and no law is cited. The bill has no merit. The law reprobates comment by the trial judge on the facts in the presence of the jury. No prohibition is to be found against "commenting on the law." La.Code Crim.Proc. arts. 30, 31, 772.

Bill 21
In his effort to explain the meaning of "sudden passion" as used in the definition *282 of manslaughter, defense counsel posed the question, "In your opinion (speaking to the prospective juror) would a man finding his wife committing an act of adultery with another man be such as would cause the average person to be." When the District Attorney objected, the trial judge sustained the objection, and Bill 21 was reserved.
Defense counsel then asked the prospective juror, "What do you think about a wife who commits adultery?" Objection was again made, but this time the judge permitted the question. Subsequent questioning permitted the defense to explore the prospective juror's entire attitude on the subject. We discern no error insofar as the defense is concerned. The bill has no merit. La.Code Crim.Proc. art. 786, 787; State v. Schoonover, 252 La. 311, 211 So.2d 273 (1968), cert. denied, 394 U.S. 931, 89 S.Ct. 1199, 22 L.Ed.2d 460.

Bill 26
This bill concerns the trial judge's refusal to excuse a prospective juror for cause on the ground that he could not hear well enough to serve. The judge questioned the witness and ascertained first-hand that he could hear well enough to serve. The only evidence to the contrary consists of statements by the prospective juror that he did not hear as well as he did formerly and that a doctor had prescribed pills for his condition. The finding of the trial judge is supported by the record and will not be disturbed. La.Code Crim. Proc. art. 787, 797.

Bill 22
This bill is based on the contention that the evidence does not support a finding that the prospective juror Williams should have been excused on the ground that he had a fixed opinion.
On voir dire examination Williams stated that he had a fixed opinion in the case. He had kept informed of the facts from general talk and the news media and he did not think his opinion would yield to the evidence at the trial. It may be inferred that his attitude in these matters was influenced to a considerable extent by the fact that he testified he had killed two men before coming to Louisiana. La.Code Crim. Proc. art. 787, 797.
This bill has no merit.

Bills 24 and 25
Prospective juror Carl Hadden was excused for cause on a finding by the trial judge that he could not be fair and impartial.
Hadden testified candidly that Fallon's family had been friends of his family for years. He believed this relationship would cause him to be prejudiced in Fallon's favor. In response to a question by the judge he expressed the opinion that he could not made a fair and impartial juror. These bills have no merit. La.Code Crim. Proc. art. 787, 797.

Bill 29
Inability to read and write the English language is the basis for the defense challenge for cause asserted against prospective juror Tucker. Although the challenge for cause was denied by the trial judge, defense counsel later accepted Tucker as a juror. These circumstances result in a waiver of the challenge and make it clear that the bill has no merit.

Bills 30 and 37
On voir dire examination prospective juror Byrd stated that he had heard quite a bit about the case, after which defense counsel asked, "What have you heard about it?" Objection was made by the District Attorney because, he argued, a number of jurors had been selected, and the question sought to elicit *283 hearsay testimony concerning the case from Byrd which should not be permitted in the hearing of the jurors already selected and assembled in the courtroom. The trial judge sustained the objection, ruling that "A man cannot state what he's heard. He can state whether or not he's heard anything and if he has, how it might affect his opinion."
A similar question was propounded and objected to when prospective juror Gardner was being examined on voir dire. The judge's ruling was the same.
"The court, the state and the defendant shall have the right to examine prospective jurors. The scope of the examination shall be within the discretion of the court . . . ." La.Code Crim. Proc. art. 786.
In our view the trial judge wisely denied the defense the opportunity to bring hearsay testimony before the selected jurors. His authority to regulate the scope of the examination in this manner is supported by the quoted article of the Code of Criminal Procedure. These bills have no merit.

Bill 38
When defense counsel had exhausted his peremptory challenges, he requested that the trial judge allow the defense additional peremptory challenges to serve in lieu of peremptory challenges he was compelled to exercise because, he contended, challenges for cause had been improperly denied.
The number of peremptory challenges is "fixed by law", and the judge has no authority to increase or reduce the allowance. La.Const. art. I, ¶ 10; La.Code Crim. Proc. art. 799. The defense request for an increase was properly disallowed.

Bills 42 and 42a
When this case was first tried, the office of district attorney was filled by another. At the time, in order to avoid a continuance, because out-of-state witnesses were not present, the then district attorney stipulated that he would produce no evidence to show that Fallon had threatened his wife prior to shooting her. This first trial resulted in a mistrial. Thereafter the present District Attorney was elected and assumed the office. He then proceeded with the prosecution of this case anew. At the second trial, after the reading of the indictment but prior to the opening statement of the District Attorney, defense counsel moved that the stipulation entered at the previous trial be binding on the District Attorney in the present trial; as a consequence, the District Attorney did stipulate as follows:
My conception of the stipulation Judge, it limits the State insofar as presenting any evidence against the defendant of threats by him to any person on the life of his late wife. I will abide by that stipulation but I do not intend to give up my right to use such threats or otherwise, to impeach defendant or any other witness who takes the stand when the defense presents its case. I shall not present any evidence in chief.
The trial judge ruled that, considering the stipulation, the State would not be permitted to present evidence of any prior communicated threats allegedly made by the accused against the life of his wife. However, he reserved any ruling in regard to questions the State would be permitted to propound on cross-examination in the event the accused took the stand to testify in his own behalf.
In our view the ruling was entirely fair. This is especially so since we entertain serious doubt that a stipulation entered into in a previous trial by another district attorney can be binding on his successor when the case is being tried de novo.
This bill has no merit.

Bills 43, 44, 45
In his opening statement to the jury, the District Attorney stated that the *284 defendant Fallon and his wife were married in July 1970. About four months later, according to a suit Fallon filed against her, she abandoned him. It was also stated that these allegations were denied by the wife in her answer to the suit.
Defense counsel objected that this information was inadmissible and immaterial and moved for a mistrial. The motion was denied. Further references to the civil suit for separation were objected to as hearsay with the request that the judge admonish the jury to disregard the statements by the District Attorney.
The trial judge correctly ruled that the opening statement of the District Attorney was not evidence subject to objection at the time, but simply a statement of what he intended to prove, not how it was to be proven.
"The opening statement of the state shall explain the nature of the charge, and set forth, in general terms, the nature of the evidence by which the state expects to prove the charge." La.Code Crim.Proc. art. 766. The opening statement has no probative force; rather, it is designed to inform and protect from surprise. State v. Shaffer, 260 La. 605, 257 So.2d 121 (1971); State v. Kreller, 255 La. 982, 233 So.2d 906 (1970); State v. Barton, 207 La. 820, 22 So.2d 183 (1945).
These bills have no merit.

Bill 49
It is unclear from the evidence attached just what is objected to in this bill. The brief asserts that the introduction of gruesome photographs of the victim's nude body showing the fatal bullet wounds was permitted over defense objection. It is argued that the police who took the photographs required the corpse to be positioned in such a manner that the bullet wounds were exaggerated.
At the outset, the evidence does not support the assertion that the body of the victim was intentionally positioned to exaggerate the wounds. Further, this Court has repeatedly held that photographs of the body of the victim depicting the fatal wounds are relevant to prove the corpus delicti, to corroborate other evidence of the manner in which death occurred and to establish the location, severity and number of wounds, and the identity of the victim. The test of admissibility is whether the probative value of the photographs outweighs the prejudice which may result from their display to the jury. Our view of the photographs confirms the finding of the trial judge that they were not gruesome and were admissible under this test. State v. Ford, 259 La. 1037, 254 So. 2d 457 (1971); State v. Maiden, 258 La. 417, 246 So.2d 810 (1971); State v. Washington, 256 La. 233, 236 So.2d 23 (1970); State v. DePietro, 243 La. 897, 148 So.2d 593 (1963).

Bill 51
While defense counsel was questioning Dr. McCuller concerning a request by Fallon's mother that Fallon be given a mental examination, the testimony developed the fact that Mrs. Fallon called Dr. McCuller and requested such an examination. A dialogue ensued between the District Attorney, defense counsel and the judge relative to the reason why Fallon was picked up for mental examination. The District Attorney had repeatedly objected to any testimony by the doctor stating what Fallon's mother had said to him on the ground that it would be hearsay. During the course of the exchange, defense counsel, to support his position, made the statement that the doctor was attempting to explain why he thought the defendant had to be "institutionalized three days before this crime." Thereupon the judge remarked, "I have not understood this doctor to say that he thought it was necessary." Then defense counsel moved for a mistrial, assigning as reason therefor that the judge had commented on the facts. The motion was denied, the judge stating, "I'm not commenting *285 on the evidence, I said I haven't heard it.", and this bill was reserved.
The rule of law relied upon by the defense appears in Article 772 of the Code of Criminal Procedure:
The judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted.
The rule is designed to safeguard the constitutional prerogative of the jury as the sole judges of the facts on the issue of guilt or innocence. La.Const. art. XIX, 9; State v. Murphy, 154 La. 190, 97 So. 397 (1923).
However, the prohibition against comment upon the facts by the judge is subject to a clearly defined exception often recognized and applied by this Court and the courts of most American jurisdictions. Generally it is not considered improper for the judge to make statements which may pertain to the facts in the presence of the jury while ruling on the admissibility and effect of evidence and the validity of the objections thereto, provided the comment is neither unfair nor prejudicial to the accused. State v. Hills, 241 La. 345, 129 So. 2d 12 (1961), rev'd. on rehearing on other grounds; State v. Scott, 237 La. 71, 110 So.2d 530, cert. denied, 361 U.S. 834, 80 S. Ct. 85, 4 L.Ed.2d 75; State v. Nicolosi, 228 La. 65, 81 So.2d 771 (1955); State v. Pace, 183 La. 838, 165 So. 6 (1935); 23 C.J.S. Criminal Law § 992.
In the instant case defense counsel was traveling outside the record in his argument before the jury where the doctor's testimony was concerned. State v. Murphy, supra. For the judge to remark that he could not accept this misstatement of the fact as a basis for his ruling was not error. Nothing about this remark was likely to influence the jury improperly and no prejudice resulted. La.Code Crim.Proc. art. 921.

Bills 52 and 53
The district attorney having objected that the testimony was hearsay, Dr. McCuller was not permitted to repeat the statement of defendant's mother, the statement upon which he based his opinion that Fallon was in need of mental observation; these statements having been made to the doctor by Fallon's mother three days before Fallon shot his wife. Some time thereafter Dr. McCuller was appointed as a member of the Commission to examine into the mental condition of the accused. It is in this latter status as an expert member of the Commission, that defense counsel argues the doctor is entitled to recount hearsay statements upon which he based his opinion regarding Fallon's mental condition.
It is not shown from the evidence forming part of these bills that Dr. McCuller based his expert opinion on the hearsay statements made by Fallon's mother three days before the killing. Under these particular circumstances, at the time of the objection and ruling, and in the absence of such a showing, the hearsay evidence was properly excluded. La.R.S. 15:434, 15:463. Subsequently defense counsel was permitted to have entered into the record the reason Fallon's mother gave to the doctor for inquiring into his mental condition, the reason being that Fallon had written a suicide note. Since the information sought was later obtained, no prejudice could have resulted from the ruling. La.Code Crim.Proc. art. 921.

Bill 55
This bill is based upon the contention that the trial judge erred in overruling a motion by the defendant to have Esther Bell Medlin, mother of the victim, Jeanne Fallon, disqualified as a witness for violating the rule of sequestration.
*286 This is a fact question. The only evidence on the subject was a rambling, incoherent fishing expedition by defense counsel obviously launched in the hope that evidence of a violation would be uncovered. None was. The bill is without merit. La. Code Crim.Proc. art. 764.

Bill 56
Apparently this bill was reserved because defense counsel felt there had been a violation of the agreement with the district attorney that he would not present evidence that Fallon threatened his wife prior to killing her.
As we have already observed in connection with the discussion on Bills 42 and 42a, we doubt that a stipulation by a district attorney in the trial of a case can be binding on his successor who is trying the case de novo. However, in view of the reaffirmance of the agreement in the instant case, the State is bound by the latter stipulation as qualified. This brings us to the question: Did a violation of this agreement take place?
On direct examination Mrs. Medlin, the victim's mother, testified that the last time she saw her daughter Jeanne Fallon alive was when she left Mrs. Medlin's house in her car. As Jeanne Fallon backed out into the street, her mother saw a black car coming up the road at a terrific rate of speed. The driver appeared to be the defendant Wiley Fallon. He was following close behind the car being driven by Jeanne Fallon as they disappeared over the hill.
No objection was made at the time by defense counsel that the questions or answers by which this testimony was developed constituted a violation of the stipulation. We doubt that this evidence could be construed as such. Nevertheless,
An irregularity or error in the proceedings cannot be availed of after verdict unless it is objected to at the time of its occurrence and a bill of exceptions is reserved to the adverse ruling of the court on such objection. Failure to reserve a bill of exceptions at the time of an adverse ruling of the court operates as a waiver of the objection and as an acquiescence in the irregularity or ruling. . . . (La.Code Crim.Proc. art. 841).
This bill has no merit.

Bill 57
While interrogating the witness Harlan Beene, Jr., the district attorney asked him what conversation he had with the defendant Wiley Fallon shortly before Fallon's marriage to the victim Jeanne Fallon. The question was objected to as seeking to elicit hearsay testimony. The judge ruled, "It is not hearsay if it is something he discussed with the defendant, it is not hearsay. The objection at this point is overruled. It may be good later, I don't know." This bill was reserved.
The witness then proceeded to summarize what he, the witness, told Fallon on the occasion; he said that Jeanne was only going to marry him to spite Stacey Freeman because she and Freeman had recently had a falling out; and he tried to talk Fallon out of the marriage.
Hearsay evidence, insofar as the rule is pertinent here, consists of testimony as to any recital of facts heard by the witness. La.R.S. 15:463. When it falls within this definition the evidence is inadmissible. La.R.S. 15:434.
Beene's testimony only concerned what he told Fallon. At no time did he say what Fallon told him. His testimony, therefore, was not hearsay. This bill is without merit.

Bills 47, 48 and 58
These bills were reserved when defense counsel moved that the court invoke its protective powers in aid of its jurisdiction and prohibit any further commentary by *287 the news media concerning the trial. The motion was made in order that the witnesses under sequestration would not learn what had transpired at the trial out of their presence. When the motion was denied defense counsel moved that, as an alternative, all witnesses under sequestration be subjected to the same restrictions imposed upon the jurythat is, that they be locked up for the duration of the trial. This alternative motion was also denied.
Thereafter, during the trial, defense counsel moved for a mistrial. He asserted as grounds therefor that prejudicial publicity appeared in the local papers. He argued that the testimony of witnesses, and statements by the District Attorney concerning the probable duration of the trial, were widely publicized creating prejudice which entitled him to a mistrial.
Sequestration of witnesses is an order by the court that the witnesses be excluded from the courtroom or from where they can see or hear the proceedings and refrain from discussing the facts of the case or the testimony of any witness with anyone other than the district attorney or defense counsel. La.Code Crim. Proc. art. 764. The order, when issued, is subject to modification in the interest of justice. Id. Witnesses who violate this order are not necessarily disqualified from testifying, but a violation is a contempt. La.Code Crim.Proc. art. 21.
No showing was made, and we cannot speculate, that the witnesses under sequestration had knowledge of the publicity which is said to be prejudicial to the defendant. Nor is a showing made that the order of sequestration was violated in any particular. There was no ground, therefore, to order a mistrial or to impose the rigors of confinement on the witnesses subject to sequestration.
Considered in light of the foregoing findings, and in the absence of other evidence of an extraordinary character, we find it unnecessary to discuss the authority of the trial judge to limit publication of the facts transpiring at the trial.
These bills have no merit.

Bill 62
It is contended that the trial judge erred in overruling a motion for mistrial when the Chief Investigator for the sheriff's office, Bill Gray, testified that the victim Jeanne Fallon told him ". . . she didn't want to talk to him, (Wiley Fallon) she was afraid of him . . . ." (parentheses added).
The contention is adequately disposed of by the per curiam of the trial judge, viz.:
The remarks or comments complained of in this bill were elicited from the defendant's witness, Deputy Sheriff Bill Gray on cross-examination. The Court sustained the defendant's objection that the remarks or comments were hearsay and admonished the jury to ignore them. The Court refused to grant the defendant's motion for mistrial because it was satisfied that its admonition was sufficient to assure the defendant a fair trial.
The bill has no merit.

Bill 64
Another motion for a mistrial was made by the defense when the judge admonished the jury to ignore the testimony of defense witness Bill Gray. The admonition is said to be a comment on the facts. The admonition complained of was in these words:
Gentlemen, before you retired, the response to a question on cross-examination, the witness, Bill Gray, testified as to a statement purportedly made to him by the deceased party, Mrs. Jeanne Fallon, in the summer of 1970. The court is of the opinion that this testimony is hearsay and not admissible in evidence. And therefore you are to disregard it, in your deliberation. I don't have no way *288 of knowing what you recall, but whatever it is, you disregard it. It should have not come in.
As the trial judge points out in his per curiam, the admonition was entirely proper. It was not a comment upon the facts, the repetition of any testimony or the giving of an opinion as to what had been proved, not proved or refuted. It was rather an opinion that certain testimony which had been heard by the jury was hearsay, coupled with an admonition to the jury that the testimony be disregarded.

Bill 68
While the accused was on the stand under cross-examination by the district attorney, he was asked if he had ever been convicted of a crime. The question was objected to and the objection was overruled. The ruling was correct.
Although a witness may not be asked on cross-examination whether or not he has ever been indicted or arrested, he can be questioned as to conviction. Thus, evidence of conviction of crime, but not of arrest, indictment or prosecution, is admissible for the purpose of impeaching the credibility of the witness. When adduced from the witness whose credibility is to be impeached, no predicate is required. La. R.S. 15:495.
This bill has no merit.

Bill 69
Defense counsel objected to the introduction in evidence of State Exhibit 10. The exhibit is a copy, certified in accordance with the Act of Congress, of the record of the Municipal Court, City of Daytona Beach, Florida, showing that Fallon had been charged with disorderly conduct and assault and battery, pled guilty and not guilty, respectively, to these charges and was sentenced to sixty days on each. The ground for the objection is that the document "comes from the District Attorney" and that some of the blank spaces on the printed form had not been filled out and that the form was not intelligible.
The document has been examined on this review and is entirely comprehensible. No argument is made, and no law is referred to, which supports this bill. It is without merit.

Bill 70
This bill was reserved when the trial judge denied the defense motion for subpoenas for out-of-state witnesses. The evidence attached to the bill makes it impossible to ascertain the facts and circumstances surrounding this motion, its content, or the basis for the ruling. No proper bill is presented for review. La.Code Crim.Proc. arts. 841-845.

Bills 71, 72, 73, 74 and 75
The district attorney questioned Wiley Fallon's mother on cross-examination concerning a statement she made to Chief Investigator Bill Gray three days before the killing. The questioning related to a letter written by defendant Fallon to his mother wherein he threatened to take his own life. The District Attorney was attempting to show that a like threat had been made by defendant on a previous occasion. He asked Fallon's mother if she had borrowed $600 which she used to dissuade him from carrying out the former threat. She denied this fact. She was then asked if she had not told Bill Gray that she borrowed $600 for that purpose. She denied making that statement. By pursuing the issue in an effort to establish that Fallon's mother did in fact borrow money to give to him, the district attorney was properly attacking the witness' credibility. Subsequent questioning disclosed that Mrs. Fallon did actually obtain money from the bank to give to the defendant at the time mentioned.
It is argued that the questions pursuing this line of questioning were irrelevant and *289 immaterial. As the summary indicates, the credibility of witnesses is always relevant and material at the trial. La.R.S. 15:493.

Bill 76
Defendant's mother was on the witness stand being questioned by defense counsel. He asked her if she had given money to anyone to pay for Mr. Wells to go to Florida. She answered she did not. Counsel then asked her if she gave money to the McGraws, and she again said she did not. He then asked, "Who did you give it to?" She replied that she gave the money to pay defendant's expenses to get home. When she was again asked to whom she gave the money she stated, "Well, actually, Wiley used a credit card and we paid them and I think I have those receipts at home." Defense counsel again asked, "Mrs. Fallon, who did you give the money to?", whereupon the District Attorney objected that the questioning had become repetitious.
In ruling on the objection, which he sustained, the trial judge observed that Mrs. Fallon had answered the question. At this point defense counsel moved for a mistrial on the ground that the trial judge had commented on the evidence. The motion was denied and this bill reserved.
It is not improper for the trial judge to make remarks in the presence of the jury giving his reasons for ruling on a motion for a mistrial, provided there is no studied attempt to influence the jury in its fact-finding function and thereby improperly prejudice the accused. La.Code Crim. Proc. arts. 772, 806; State v. Scott, 237 La. 71, 110 So.2d 530 (1959), cert. denied, 361 U.S. 834, 80 S.Ct. 85, 4 L.Ed.2d 75.

Bill 77
Asserting in brief that the trial judge erred by overruling a motion for a mistrial grounded upon the contention that the cumulative, rehearsed hearsay testimony by witnesses at the trial resulted in prejudice to the accused, defense counsel reserved this bill. Particularly, the testimony of Bill Gray, Roland McKneely and Bill Lynch is relied upon to support the contention.
Forty-four pages of testimony are attached to the bill of exceptions from which, it may be inferred, defense counsel expects the court to ferret out errors to support his position. Although the testimony has been reviewed with the defense contentions in mind, we are unable to conclude from the posture of the various witnesses or the context of their testimony that hearsay evidence was admitted over objection as the law requires. La.Code Crim.Proc. art. 841-845; La.R.S. 15:434.

Bill 78
This bill is founded upon the proposition that it was error for the judge to permit Dr. Armistead, over objection, to read Article 14 of the Criminal Code to the jury.
Dr. Armistead's testimony related to defendant's mental capacity, a plea of insanity having been entered. When Dr. Armistead was questioned on the basis of the District Attorney's understanding of the proper legal test of insanity, defense counsel objected that as stated the test was an incorrect statement of the law. To remove the objection the District Attorney requested that the doctor read Article 14 of the Criminal Code, which defines the test of mental incompetency in Louisiana law.
We perceive no error in such a procedure. It is true, as defense counsel contends, that the principal responsibility for instructing the jury on the law rests with the trial judge. However, it is not objectionable for the judge to permit a witness to read the law if it will clear up a misunderstanding or promote an opinion of an expert witness which is based upon a proper understanding of the legal test involved.

*290 Bill 82

This is a frivolous bill. When the witness Bill Gray was asked if he examined the left front door of the Jeanne Fallon automobile defense counsel objected, apparently because the car was not produced in the court room as the best evidence. The objection was overruled and this bill was reserved. The bill has no merit. The best evidence rule, like all other rules of law, must be applied sensibly and with reason.

Bill 83
This bill was reserved when the trial judge overruled a motion to prohibit the testimony of Linda Fisher on the ground that adequate sequestration had not been maintained. This is the evidence:
Q. Has Mr. Brown told you anything about the testimony of any of the witnesses?
A. No Sir.
Q. Has any one told you anything about the testimony of the witnesses?
A. No.
Q. Do you read the newspapers?
A. Yes sir.
Q. Do you watch television?
A. I haven't watched TV since
Q. You haven't been watching TV? A. Not in regards to the case.
Q. Have you read the newspapers, the Shreveport Times and the Journal over the past week?
A. No, I just read the Saturday morning paper.
Q. Did you read the article about Mr. Fallon testifying?
A. Yes.
We find no error in the ruling of the trial judge. The evidence is insufficient to support a motion to disqualify the witness. La.Code Crim.Proc. art. 764.

Bill 84
Wiley Fallon took the witness stand in his own defense. In answer to questions concerning his relations with his wife he testified that he had no intention of "harming her at all in any way, ever." He further testified that just prior to their separation on December 6, 1970 his marriage was "100% normal", they had no arguments, and at no time during their marriage did he ever strike her or harm her in any way.
The prosecution called Linda Fisher as a witness in rebuttal and asked her if, during the latter part of 1970, she had occasion to conceal Jeanne Fallon and her children. Defense counsel objected that the testimony sought to be elicited by the question was an effort to show that the defendant Fallon had threatened his wife. This, the defense argued, was a violation of the stipulation whereby the District Attorney agreed he would introduce no evidence that Fallon threatened his wife prior to shooting her. (See quoted stipulation in our consideration of Bills 42 and 42a). The objection was overruled. By further questioning the District Attorney obtained from the witness the reply that she had in fact concealed the victim Jeanne Fallon from Wiley Fallon at her house.
The ruling was correct. Although the stipulation does generally provide that the District Attorney would not present evidence against the defendant tending to show that he had threatened the life of his wife, the stipulation by its very terms applies only to evidence in chief. An exception in the stipulation sets forth that it does not apply to rebuttal evidence used to "impeach defendant or any other witness who takes the stand when the defense presents its case." The evidence elicited in connection with this bill is relevant and *291 material; it falls within the exception as rebuttal evidence. This bill has no merit.

Bill 85
In questioning Linda Fisher about the incident when she concealed Jeanne Fallon and her children in her house, the District Attorney asked her, "Was this a serious matter?" The question was objected to as leading, and the objection was overruled. The witness answered that it was a serious matter.
Notwithstanding the general rule against leading questions, the matter is largely within the discretion of the trial court, which may allow such questions to be put to a witness when it deems such course necessary or advisable, or refuse to allow such questions where the circumstances do not seem to require such mode of examination; and in the absence of palpable abuse of discretion resulting in prejudice to the accused, reversible error cannot be predicated upon a ruling of the trial court allowing leading questions. State v. Hollingsworth, 160 La. 26, 106 So. 662 (1925). And to warrant consideration on review, an objection to a leading question should point out contemporaneously the harm and prejudice the accused will suffer by permitting the question. State v. Smith, 193 La. 665, 192 So. 92 (1939); State v. Antoine, 189 La. 619, 180 So. 465 (1938); McCormick's Handbook of the Law of Evidence 6 (2d ed 1972).

Bills 86 and 87
Objection was made by the defense to the interrogation of Dr. McCuller, a member of the Sanity Commission, relative to what the defendant Fallon said he told the doctor on February 2, 1971. Another objection was made when the District Attorney asked the doctor to refer to the written report of the Sanity Commission. Both objections were overruled. This questioning on rebuttal by the State was both material and relevant to Fallon's testimony recounting what he told the psychiatrist on that date.

Bills 88, 89, 90, 91 and 92
As an expert witness and a member of the Sanity Commission, leading questions were permissible insofar as Dr. McCuller was concerned. See Bill 85, supra. The same ruling applies to the questions propounded to Dr. Paul Ware, a medical doctor whose testimony concerned his opinion of the defendant's mental condition. Reference to reports of doctors and nurses compiled on defendant's conduct in the hospital was used by the doctor as part of the facts upon which his opinion was based. This was objected to as hearsay. However, it was permissible.
The character of the evidence upon which an expert bases his opinion is ordinarily a matter which affects the weight to be accorded the expert's opinion. It has no bearing upon the admissibility of the evidence. Accordingly, doctors may refer to reports on the patient prepared by other doctors or nurses as a basis for their expert medical opinion. La.R.S. 15:464-15:466; Sundquist v. Madison Rys. Co., 197 Wis. 83, 221 N.W. 392 (1928); Taylor v. Monongahela Ry. Co., 155 F.Supp. 601 (D.C.Pa.1957); Jenkins v. United States, 113 U.S.App.D.C. 300, 307 F.2d 637 (1962); Carrington v. Civil Aeronautics Board, 337 F.2d 913 (4th Cir. 1964), cert. denied, 381 U.S. 927, 85 S.Ct. 1565, 14 L.Ed.2d 686; McCormick's Handbook of the Law of Evidence ¶ 15 (2d ed. 1972).

Bill 93
Defendant's counsel objected when the District Attorney asked the witness James Stephenson if he knew people who knew the defendant Fallon. The question was objected to as improper rebuttal. In response the District Attorney said, "If the court please, this is character rebuttal," to which defense counsel replied, "We haven't introduced any character evidence Your *292 Honor." The objection was sustained and, at the request of defense counsel, the judge admonished the jury to "disregard any reference to the character of the accused."
Later defense counsel moved for a mistrial "based upon the attempt by the District Attorney to get before the jury, evidence as to the defendant's character when his character had not been placed at issue."
No error appears from this "attempt" by the District Attorney to adduce evidence of defendant's character. The judge properly stopped the questioning on the subject. Every attempt to introduce evidence which is inadmissible does not result in error.

Bill 94
No law is cited to support the contention that it is error for the trial judge to refuse to furnish defense counsel with a copy of his written charge prior to the closing argument to the jury. The argument is made that failure to do so disadvantages defense counsel in his closing argument. The theory of this contention is that defense counsel cannot argue the law because he does not know what the legal issues will be until the judge charges the jury.
Article 801 of the Code of Criminal Procedure is dispositive of the question thus presented. It reads:
The court shall charge the jury after the presentation of all evidence and arguments. The court shall reduce its charge to writing if it is requested to do so by either a defendant or the state prior to the swearing of the first witness at the trial on the merits. The court's written charge shall be read to the jury. The court shall deliver a copy thereof to the defendant and to the state prior to reading it to the jury.
As we read this Article, it is sufficient for the court to deliver a copy of its written charge at any time prior to reading it to the jury. Therefore, as in this case, it suffices to deliver copies "after the presentation of all evidence and arguments."

Bills 95-108
Counsel for the accused submitted thirty-four requested instructions to the trial judge for inclusion in the charge to the jury. He has reserved bills of exceptions to the refusal of the judge to incorporate fourteen of these special instructions.
The principal thrust of the special instructions refused by the trial judge was an effort to present a test of insanity other than the "right or wrong" test required by our law. The argument is made that the Louisiana test of insanity is unconstitutional in that it violates the Eighth and Fourteenth Amendments to the United States Constitution.
The right or wrong test in Louisiana law is embodied in Article 14 of the Criminal Code in these words:
If the circumstances indicate that because of a mental disease or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question, the offender shall be exempt from criminal responsibility.
This Court has rejected the contention that the law of Louisiana on the sanity test employed in Louisiana is outmoded and archaic and should be changed to conform with tests in use in other jurisdictions. State v. Jenkins, 236 La. 256, 107 So.2d 632 (1959), cert. denied, 359 U.S. 998, 79 S.Ct. 1135, 3 L.Ed.2d 986. The identical question presented here has been adjudged in our decision in State v. Plaisance, 252 La. 212, 210 So.2d 323 (1968), cert. denied, 393 U.S. 1005, 89 S.Ct. 496, 21 L.Ed.2d 470. The test in use in Louisiana prevails in most American jurisdictions. 21 Am. Jur.2d, Criminal Law, 33.
We find no constitutional infirmity in the rule, and none has been pointed out. State v. Frezal, 278 So.2d 64 (La.1973) *293 Otherwise the requested charges were either not applicable, not wholly correct or pertinent or they were covered in the general charge or required qualification, limitation or explanation. La.Code Crim.Proc. art. 807.
These bills have no merit.

Bills 109, 110, 111
At a hearing on a motion for a new trial, defense counsel moved that the matter be continued and that the court issue subpoenaes to compel the attendance of J. M. McGinnis, formerly clerk of the Municipal Court of Daytona Beach, Florida; George Moran, present clerk of that court; Judge Nicholas George, judge of that court; R. K. Loren; W. Rushing; Officer Bernard; and Lieutenant Loots, and his entire squad, all with the Daytona Departments Police; together with subpoenaes duces tecum to compel the production of all records relating to the case of Wiley Fallon.
The purpose of the subpoenaes was to refute and contradict the certified copy of the record of the Daytona Municipal Court showing the conviction of Wiley Fallon which had been introduced in evidence on the trial of the case.
In view of the fact that the record sought to be refuted was properly certified, and no evidence was produced to show that it was an incorrect record, there is no merit to this bill. We believe defense counsel was attempting to obtain these witnesses and records in order to explore the possibility that there may have been a discrepancy in the certified recordthat is, to conduct a fishing expedition. Reasonable diligence would have enabled any material evidence to be produced prior to this late date.
We are moreover convinced that production of this evidence would not have changed the verdict, and no injustice results from the trial court's ruling. La. Code Crim.Proc. art. 851.
We are convinced that the accused received a fair and impartial trial. He readily admitted shooting his wife. His real defense was insanity at the time of the commission of the offense which he could not satisfactorily establish. It may be said of the many and diverse issues raised by the defense that none have resulted in the denial of a fair and impartial trial.
The conviction and sentence are affirmed.
BARHAM, J., concurs with written reasons.
BARHAM, Justice (concurring).
I do not subscribe to the language used by the majority in its discussion of Bill of Exceptions No. 76, wherein it is stated: "It is not improper for the trial judge to make remarks in the presence of the jury giving his reasons for ruling on a motion for a mistrial, provided there is no studied attempt to influence the jury in its fact-finding function and thereby improperly prejudice the accused. * * *" (Emphasis supplied.) This is not, in my belief, a correct statement of the law under Code of Criminal Procedure Article 772.[*] If remarks made by a trial judge amount to a comment on the evidence, such remarks, made in the jury's presence, constitute non-correctable error requiring mistrial or reversal. State v. Brevelle, 270 So.2d 852 (La.1973). The trial judge's good or ill motives or intentions would have no bearing on the propriety of such comment, nor would it matter if the prohibited comment was made while the trial judge was giving reasons for his ruling on a motion.
In this case, the remark objected to by defense counsel was: "She has answered *294 the question several times." The question propounded by defense counsel to Mrs. Fallon, defendant's mother, was: "Mrs. Fallon, who did you give the money to?" An examination of the pertinent portions of Mrs. Fallon's testimony discloses that at no time did she state to whom she had given the subject money.
Nevertheless, it is my opinion that the trial judge's remark did not result in a comment on the evidence which would require reversal of this defendant's conviction. Rather, it appears that the trial judge's remark operated to restrict the scope of defense counsel's examination of the witness. If this restriction was error, it does not appear that it resulted in a miscarriage of justice or that it constituted a substantial violation of defendant's rights. Code of Criminal Procedure Article 921.
I respectfully concur in the decree only.

ON APPLICATION FOR REHEARING
PER CURIAM.
Defendant was tried and convicted of manslaughter. On appeal the conviction was affirmed.
The opinion in this case was rendered on January 14, 1974. The application for rehearing was sent by mail and was received on Wednesday, January 30, 1974. The package in which the application was mailed is not postmarked.
Supreme Court Rule IX (1974) provides in pertinent part:
"Section 1. An application for rehearing must be filed with the clerk on or before the fourteenth calendar day after the rendition of judgment, and no extension of time therefor will be granted. Eight copies of the application shall be filed with the original. A copy of the application shall be mailed or delivered to opposing counsel.
"Section 2. An application for rehearing properly mailed shall be deemed timely filed when the official United States postmark upon the envelope transmitting such application shows that it was mailed on or before the last day of the delay for making such application." (Emphasis added).
Sixteen days lapsed between rendition and the day the application was received. Without a postmark the application does not fall within Rule IX § 2 and therefore the date of receipt must be considered to be the day of filing. For these reasons the application is untimely and should not be considered.
Not considered.
BARHAM, J., is of the opinion the application should be considered.
TATE, Justice.
Although the official postal cancellation is undated this court received it within a time which indicated it was timely mailed. I think we should consider the application as timely since the lack of official postal dating is unsuspicious and through no fault of the applicant.
NOTES
[*] "The judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted."